Collins, et al. v. Thomas, et al., Docket No. 336-7-03 Wmcv (Wesley, J., Nov. 4, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


**STATE OF VERMONT**
**WINDHAM COUNTY, SS.**

SALLY COLLINS, as Administratrix
of the Estate of David Collins and Individually,
CHUCK COLLINS and AMANDA COLLINS,
        Plaintiffs,

        v.               WINDHAM SUPERIOR COURT
                           DOCKET NO. 336-7-03 Wmcv

NATHAN THOMAS and
BRADFORD GARLAND,
        Defendants.


ORDER GRANTING DEFENDANT GARLAND'S
MOTION FOR SUMMARY JUDGMENT


From an incident occurring in the early hours of the morning on July 29, 2001, David

Collins was tragically killed when he fell off a pick-up truck driven by Bradford Garland.

Plaintiffs have sued Garland,[1] asserting that he was negligent in (1) driving a truck with several

defects and an expired inspection sticker, and (2) allowing Collins, who he knew to be

intoxicated, to ride in the back of the truck unrestrained.

Currently pending is Garland's motion for summary judgment. The Court agrees with

Garland that liability cannot be based on the truck's defects or the expired inspection sticker,

---

[1] Sally and Chuck Collins are David Collins' parents, and Amanda is his sister. Sally is also administratrix of David's estate. Plaintiffs originally sued the owner of the truck (Nathan Thomas) also, but the owner was dismissed as a defendant following his discharge in bankruptcy.

since there is no evidence that these violations contributed in any way to the cause of the accident. Moreover, the Court agrees with Garland that there is no common-law duty on the part of a sober driver to protect an intoxicated passenger from the consequences of the intoxicated passenger's own actions, and that the imposition of such a duty would be inconsistent with the social policy favoring the use of designated drivers. Accordingly, Garland's motion for summary judgment is **GRANTED**.

Summary Judgment Standard

Summary judgment is appropriate if, viewing the evidence favorably to the non-moving parties and giving them the benefit of all reasonable doubts and inferences, the Court determines that there are no genuine questions of material fact and the moving party is entitled to judgment as a matter of law. See Select Designs, Ltd. v. Union Mut. Fire Ins. Co., 165 Vt. 69, 72 (1996).

Background

Viewing the evidence favorably to Plaintiffs and giving them the benefit of reasonable doubts and inferences, it appears that on the night of the tragedy, David Collins was "hanging out" in Nathan Thomas' yard with Thomas, Harold Smith, Bradford Garland, and Daisy Bills, Garland's girlfriend. Collins was 20, and the others were 21 to 23. Garland and Bills were not drinking, but Collins, Thomas, and Smith were drinking and noticeably intoxicated. It is not clear where Collins obtained his liquor, but he was drinking from his own flask-type bottle, which was in his pocket when he fell. There is no evidence that Garland enabled Collins' state of intoxication.

Thomas' girlfriend eventually asked the group to leave, and they decided they would all

2

drive together to Brattleboro. Collins and Thomas wanted to ride their motorcycles, but Garland and Bills discouraged them from doing so since they were intoxicated. Instead, the group used Thomas' pick-up truck because it would hold all five of them, and Garland drove because he was not intoxicated. Garland and Bills rode in the front cab, and Collins, Thomas, and Smith rode in the bed of the truck, continuing to drink. The three intoxicated young men were sitting on a tool box that stretched across the bed of the truck where it met the front cab, with Thomas on the driver's side, Collins on the passenger's side, and Smith in the middle. The top of the tool box rose up a little higher than the sides of the bed.

The group headed south on Route 30, from the Townshend area toward Brattleboro. They stopped briefly at Old Route 30 near the Townshend dam, a popular spot for hanging out, and then drove on, continuing south on Route 30 at approximately 40 to 50 mph. Thomas tried to light a cigarette, but due to the wind he passed his cigarette into the cab so Garland could use his lighter to light it for him. Collins then stood up and knelt on the top of the tool box, facing forward, and leaned forward over the edge to stick a cigarette through the passenger side window, to have Bills light it for him. In this process, however, Collins fell off the truck and was run over, dying from his injuries later that day.

A subsequent search of the truck revealed that it had several defects and an expired inspection sticker. Specifically, the tire treads were worn, the headlights were defective, the windshield was cracked, a shock absorber was broken, and a brake cylinder was ruptured and leaking. No evidence links any defect in the truck or the expired inspection sticker as having played any role in causing this accident, however.

Analysis

"The elements of common law negligence are: (1) defendants owed a legal duty to protect plaintiff from an unreasonable risk of harm; (2) defendants breached that duty; (3) defendants' conduct was the proximate cause of plaintiffs' injuries; and (4) plaintiffs suffered actual damage." Knight v. Rower, 170 Vt. 96, 102 (1999).

Plaintiffs' first theory is that Garland is liable because he drove a truck with defects and an expired inspection sticker. "'The law of proximate cause calls for a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the resulting flow of injurious consequences.'" State v. Roberts, 147 Vt. 160, 163 (1986), quoting Rivers v. State, 133 Vt. 11, 14 (1974). Where injurious consequences flow from the alleged negligence but there is an intervening act, the question of whether the intervening act cuts off proximate cause and legal liability is generally one for the jury. See Roberts, 163-64. However, where the injurious consequences do not flow from the alleged negligence at all (i.e., there is no "cause-in-fact"), the question of proximate cause can be decided as a matter of law. See Rivers, 133 Vt. at 14 (action against state for injuries incurred in accident caused by driver who was inmate released on weekend pass was properly dismissed for lack of proximate cause). Here, there is no evidence of any causal link between the defects or lack of an inspection sticker and Collins' fall. Thus, Plaintiffs' first theory of liability fails as a matter of law.

Plaintiffs' second theory is that Garland was negligent in allowing Collins, who he knew was intoxicated, to ride unrestrained in the back of the pick-up truck. There is no indication that Garland was driving in a negligent manner, or that his manner of operating the vehicle contributed in any way to causing Collins to fall from the truck bed.. Garland was not speeding, swerving, or doing anything which arguably and reasonably might have contributed to the fall.

4

Rather, it cannot be disputed on the state of the evidence that Collins' fall and death directly resulted from his own actions in kneeling on the tool box and leaning forward over the edge of the truck. Thus, Garland can only be responsible at law if he had an affirmative duty to act to protect Collins from the consequences of Collins' own negligent actions.

As a general matter, one person may be legally responsible for - i.e., may have a legal duty to control - the actions of another *only* if there is special relationship between the person to be held responsible and the actor, such as a parent-child relationship or an employer-employee relationship. See Restatement (Second) of Torts §§ 315(a), 316, 317. Similarly, a person generally has a legal duty to take action to protect another from a danger the first person did not create *only* if he or she stands in a special relationship to the person to be protected, such as common carrier, innkeeper, or custodian. See id. at §§ 314A, 320. Cf. also Knight, 170 Vt. at 103 (citing Restatement sections on duty to act approvingly). These Restatement sections contemplate situations where there may be a duty to control the actions of one person to protect a third person, or a duty to protect one person from the actions of a third person, while the circumstances of the present case involve the possibility of a duty to protect one person from the consequences of that person's *own* actions. Logically, it is plausible that this should be narrower than the realm of possible duties to control and protect others described above. For purposes of this motion, the Court finds no controlling rationale in the Restatement, but rather looks to these

5

principles as useful guidelines for the outer limits of a possible duty.[2]

Garland's relationship to Collins was that of a sober driver to his intoxicated friend/passenger. Garland's role was temporary, limited, and voluntary – and also one that society seeks to encourage. Garland's position was obviously unlike that of a common carrier, innkeeper, or custodian; nor could his relationship to Collins be said to approach that of a parent or employer, such that the imposition on Garland of an obligation to control Collins would be reasonable or fair or generally expected.

---

[2] Of course, a legislature can impose a duty to act by statute, and violation of the statute could provide the basis for a common law negligence action if the plaintiff is a person meant to be protected by the statute and is injured in a way the statute contemplates and seeks to prevent. See Restatement (Second) of Torts § 286. For example, our Legislature could pass a statute prohibiting operation of a pick-up truck with unrestrained passengers in the back, or more particularly, with unrestrained impaired or minor passengers in the back. Vermont has no such law at present, however.

Although the Vermont Supreme Court has not addressed the duty of a sober driver in this context, the Indiana Supreme Court has faced the question in a case with similar facts. See Stephenson v. Ledbetter, 596 N.E.2d 1369 (Ind. 1992). In Stephenson, Defendant Ledbetter was driving a group of friends home from a night of drinking. Ledbetter was driving a pick-up truck, and Miller, the plaintiff's decedent, was riding in the open back. Miller was sitting on the side of the bed, at times leaning forward toward the driver's window to talk to Ledbetter. Miller then fell, suffering fatal head injuries. Ledbetter had not been driving in a negligent manner, and nothing about his driving caused or contributed to the fall. Nonetheless, Miller's family argued Ledbetter should be liable because he did not prevent Miller, who he knew to be intoxicated, from riding in the back, sitting on the edge of the truck, and leaning forward. The Indiana Supreme Court rejected this argument and affirmed the trial court's grant of summary judgment for Ledbetter, holding that intoxicated passengers are responsible for their own conduct, and that the driver did not owe the intoxicated passenger a duty to protect the passenger from the consequences of the passenger's own negligence. It noted that as a matter of social policy, we want to encourage people to give rides to intoxicated persons, and that holding drivers responsible for the actions of intoxicated passengers could dramatically cut against this policy. 596 N.E.2d at 1373. Cf. also Senese v. Peoples, 626 F.Supp. 465, 468 (M.D. Pa. 1985) (motion for summary judgment granted for defendant driver of pick-up truck whose intoxicated passenger fell while trying to climb from cab through window into back of truck; there is no duty to prevent passenger from injuring himself when passenger has placed himself in position of peril).[3]

---

[3] Plaintiffs cite Industrial Waste Service, Inc. v. Henderson, 305 So. 2d 42 (Fla. Dist. Ct. App. 1974), in which a Florida appellate court affirmed a jury's verdict for the family of a man killed while engaging in horseplay on the running board of a slowly moving truck, even though the decedent was

The Court finds the Indiana and Pennsylvania decisions persuasive. Thus, consistent with both the policy favoring designated drivers and the common law (Restatement) principles discussed above, the Court concludes that Garland, as a sober driver, did not have a duty to protect Collins, his intoxicated passenger, from the consequences of Collins' own negligent conduct.

Similarly, Garland cannot be liable as one who voluntarily undertook a duty to protect Collins. See Restatement (Second) of Torts, § 323. Garland undertook to drive Collins, and implicitly to drive him in a non-negligent manner. However, he did not undertake to protect Collins from other dangers not caused or created by the manner in which Garland was driving. Cf. Mulvihill v. Union Oil Co., 859 P.2d 1310, 1313-14 (Alaska 1993) (nature and extent of duty undertaken is question of law for court; and extending duty of sober driver beyond agreement to drive would be poor policy, as it would jeopardize designated driver movement).

It follows that Plaintiffs' second theory of liability also fails as a matter of law, and that Garland is entitled to summary judgment.

## ORDER

---

intoxicated at the time and put himself in a position of peril. However, the Court does not find Henderson persuasive because it does not appear from the opinion that the nature of the duty was raised or addressed in the opinion.

8

Defendant Garland's motion for summary judgment is therefore **GRANTED**.

Dated at Newfane, Vermont, this _____ day of November, 2005.


_____
John P. Wesley
Presiding Judge