No. 48,810

Loren L. Baldwin and Elizabeth A. Baldwin, *Appellants,* v. Priem's Pride Motel, Inc., *Appellee.*

(580 P.2d 1326)

Opinion filed July 15, 1978.

*Robert H. Royer, Jr.,* of Abilene, argued the cause and was on the brief for the appellants.

*John F. Christner,* of Abilene, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

McFarland, J.: This is an action brought under the Consumer Protection Act (K.S.A. 1975 Supp. 50-623, *et seq.*). The alleged defective product was a home sold to plaintiffs which was under construction. The trial court found this type of transaction was not within the purview of the act and entered summary judgment for the defendant. From this judgment plaintiffs appeal.

The facts as they relate to the issues before us are not seriously in dispute. On November 13, 1974, plaintiffs (hereinafter referred to as buyers) entered into a contract with defendant (hereinafter referred to as seller) for the purchase of real estate on which a residence was being built by seller. The purchase price was $37,500.00. The contract provided that the buyers had the right to select inside and outside paint colors. The contract further provided that it would be null and void unless the contract terms were completed by January 15, 1975. The entire transaction was expressly contingent upon the buyers securing adequate financing. Prior to the time of the execution of the contract, the seller orally advised the buyers that they would have the right to select panelling and that the home would be built in "first-class condition." On January 11, 1975, the parties entered into a second contract which extended the completion date to February 15, 1975, and enumerated six specific items that were to be corrected (these were primarily remedial in nature). The second contract acknowledged that $34,500.00 of the purchase price had been

paid. The seller was further required to deliver a general warranty deed to the property to the buyers. The buyers were required to deliver to the escrow agent a general warranty deed in the seller's favor. This latter deed was to be held by the escrow agent until performance under the contract was completed. If the $3,000.00 were paid, this latter deed was to be returned to the buyers. If the $3,000.00 were not paid, then the deed would be delivered to seller for recording.

On February 15, 1975, the buyers paid the $3,000.00 balance and occupied the premises. Apparently, at least partial occupancy started in early February. The buyers were not satisfied with the construction when they paid the final $3,000.00 and moved in, but did so on the advice of their attorney. Just prior to this payment, the seller refused to discuss the defects with the buyers. The buyers claim 36 defects existed in the house and that they expended monies and personal labor to correct some and that further expenditures would be required to correct other defects. This action was brought under the Consumer Protection Act. The buyers sought $2,000.00 for each of the 36 defects. After the action was commenced, buyers sold the home for $40,000.00 and moved to the state of California. Subsequently, the trial court granted summary judgment to the seller, stating:

"The Court further finds from the pleadings, depositions and exhibits that an original contract of sale was entered into by the parties prior to the completion of the house in question; that Plaintiffs subsequently took possession of the house and entered into a supplementary contract wherein $3,000.00 of the purchase price, previously withheld by Plaintiff, was to be paid to Defendant upon completion of specified deficiencies that subsequently said $3,000.00 was paid by Plaintiff to Defendant.

"That the transaction in its entirety is not one contemplated by or intended to be within the purview of K.S.A. 1975 Supp. 50-626, et seq.

"The Court further finds that the Plaintiffs are not entitled to a declaratory judgment as prayed for in their Petition and that the Plaintiffs should be assessed the costs of this action."

It should be noted that neither before the trial court nor this court have the buyers stated their action was brought on alternative theories, i.e., Consumer Protection Act or contract law. The buyers have chosen to base their entire cause of action on the Consumer Protection Act. The propriety of the trial court's decision must be determined in the context of the issues before it.

The principal issue before this court is whether or not the transaction in question is within the purview of the Consumer

Protection Act (K.S.A. 1975 Supp. 50-623, *et seq.*). The buyers assert that the statement that the home would be constructed in a "first-class condition," followed by "shoddy" construction, as well as the installation of a panelling of a different color than that selected, constituted deceptive and unconscionable practices prohibited by the Act. The portions of the Act (1975 Supp.) which the buyers contend authorize this action are as follows:

"**50-623. Purposes; rules of construction.** This act shall be construed liberally to promote the following policies:

"    .  .  .  .

"*(b)* to protect consumers from suppliers who commit deceptive and unconscionable sales practices;  .  .  ."

"**50-624. Definitions.**  .  .  .

"*(c)* 'Consumer transaction' means a sale, lease, assignment or other disposition for value of goods, a service, or an intangible (except insurance contracts and securities regulated under federal or state law) to a consumer or a solicitation by a supplier with respect to any of these dispositions.

"    .  .  .  .

"*(e)* 'Goods' includes any property, tangible or intangible, real, personal or mixed, or any other object, ware, merchandise, commodity or thing of value wherever situated, within or without the state of Kansas."

"**50-626. Deceptive consumer sales practices.** (*a*) No person shall engage in any false, misleading, deceptive or unconscionable trade practice in the sale, lease, rental or loan or in the offering for sale, lease, rental, or loan of any goods or services.

"(*b*)  Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act:

"(1)  Representations that:

"(A)  Goods or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

"(B)  the supplier has a sponsorship, approval, status, affiliation or connection that he does not have;

"(C)  goods are original or new, if they are deteriorated, altered, reconditioned, repossessed or second-hand or otherwise used to an extent that is materially different from the representation;

"(D)  goods or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation; or

"(E)  the consumer will receive a rebate, discount or other benefit as an inducement for entering into a consumer transaction in return for giving the supplier the names of prospective consumers or otherwise helping the supplier to enter into other consumer transactions, if receipt of benefit is contingent on an event occurring after the consumer enters into the transaction;

"(2)  the intentional use, in any oral or written representation, of exaggeration, innuendo or ambiguity as to a material fact;

"(3)  the intentional failure to state a material fact, or the intentional concealment, suppression or omission of a material fact, whether or not any person has in fact been misled;

"(4)  disparaging the goods, services or business of another by false or misleading representations of material facts;

"(5)  offering goods or services without intent to sell them;

"(6)  offering goods or services without intent to supply reasonable, expectable public demand, unless the offer discloses the limitation;

"(7)  making false or misleading representations of fact concerning the reason for, existence of or amounts of price reductions, or the price in comparison to prices of competitors or one's own price at a past or future time;

"(8)  falsely stating that a consumer transaction involves consumer rights, remedies or obligations;

"(9)  falsely stating that services, replacements or repairs are needed;

"(10)  falsely stating the reasons for offering or supplying goods or services at sale or discount prices."

"50-627.  **Unconscionable consumer sales practices.** (a) An unconscionable act or practice by a supplier in connection with a consumer transaction violates this act whether it occurs before, during or after the transaction.

"(b)  The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances which the supplier knew or had reason to know, such as, but not limited to the following:

"(1)  That he took advantage of the inability of the consumer reasonably to protect his interests because of his physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;

"(2)  that when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by like consumers;

"(3)  that when the consumer transaction was entered into, the consumer was unable to receive a material benefit from the subject of the transaction;

"(4)  that when the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the consumer;

"(5)  that the transaction he induced the consumer to enter into was excessively one-sided in favor of the supplier; and

"(6)  that he made a misleading statement of opinion on which the consumer was likely to rely to his detriment."

"50-634.  **Private remedies.** (a)  Whether he seeks or is entitled to damages or otherwise has an adequate remedy at law, a consumer may bring an action to:

"(1)  Obtain a declaratory judgment that an act or practice violates this act; or

"(2)  enjoin or obtain a restraining order against a supplier who has violated, is violating or is likely to violate this act.

"(b)  A consumer who suffers loss as a result of a violation of this act may recover, but not in a class action, actual damages or a civil penalty as provided in K.S.A. 1973 Supp. 50-636(a) as amended, whichever is greater."

"50-636.  **Civil penalties.** (a) The commission of any act or practice declared to be a violation of this act shall render the violator liable for the payment of a civil penalty, recoverable in an individual action, including an action brought by the attorney general or county attorney or district attorney, in the sum of not more than two thousand dollars ($2,000) for each violation."

In his deposition the buyer, Loren L. Baldwin, testified that he was relying on the "first-class condition" statement as the basis for the alleged violation of the Consumer Protection Act.

In determining the propriety of the summary judgment, the transaction, in its entirety, must be viewed in the light most favorable to the buyers. Accordingly, although the defects are disputed, we must assume the defects existed as claimed and that the seller stated the house would be built in "first-class condition." We also know, from the second contract, that the buyers knew of defects and included them for remedial work. The deposition of the buyer, Loren L. Baldwin, shows he knew the listed defects were not all corrected when he completed the contract and paid the balance due. In addition he knew of other defects and, also, that the seller would not even discuss them with him. The statement as to "first-class condition" is innocent "puffing," to be expected by a consumer.

Under the totality of the circumstances of this case, we find that the trial court correctly found that the transaction was not within the purview of the Consumer Protection Act and properly entered summary judgment for the defendant seller. The balance of the issues raised need not be determined by virtue of this conclusion.

The judgment is affirmed.